The plaintiffs, John Rice and Camilla L. Rice, appeal from the Montgomery Circuit Court's order upholding a 1993 consent judgment that adopted the "Reed-Buskey" redistricting plan. The plan, which was approved as part of the redistricting process due to follow the 1990 census, created eight new majority-black House districts and three new majority-black Senate districts. The Alabama House of Representatives approved the plan, but the Senate did not. The plan was precleared by the Justice Department and it is now in effect.
Four years after the adoption of the Reed-Buskey plan, the Rices challenged the 1993 consent judgment on constitutional grounds. They specifically argued that the legislative districts in which they live were created through racial gerrymandering and that the votes of white voters in those districts had been diluted.
The plaintiffs' request for modification of the 1993 consent judgment — which is based on the 1990 federal census — is moot because it would not affect future legislative elections. See City of Birmingham v. Southern Bell Tel. Tel. Co., 234 Ala. 526, 529,176 So. 301, 303 (1937) ("`[I]t is not within the province of appellate courts to decide abstract, hypothetical, or moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow.'") (quoting 4 C.J.S., Appeal and Error, § 40, pp. 117-18). The next legislative election is scheduled for the year 2002. See Ala. Code 1975, § 17-2-3 (providing that state legislators will be elected every four years beginning in 1978). By that time, the report of the 2000 federal census is scheduled to be released, and we must assume that the Legislature will timely fulfill its constitutional duty to redraw legislative districts based on that census. See13 U.S.C. § 141(c) (1988) (providing that the Bureau of the Census should forward its decennial census results to the states not later than April 1, 2001); Ala. Const. 1901, §§ 198 — 200 (providing that the state Legislature will redraw election districts in the *Page 994 
next session after the taking of each decennial census); Opinion of the Justices No. 269, 384 So.2d 1051, 1052 (Ala. 1980) (stating that this Court must assume that the Legislature acts in a manner consistent with the Constitution) (citing Board of Revenue Road Comm'rs v. Puckett, 227 Ala. 374, 149 So. 850 (1933)). Thus, we must conclude that the elections held in 2002 and subsequent years will be governed not by the current consent judgment, but by a new districting plan that is based on the 2000 federal census. Because we must assume that any potential modification of the current consent judgment based on the 1990 census would not affect the outcome of the 2002 legislative election or any successive legislative election, we must conclude that an effort by this Court to render the relief sought by the plaintiffs would not be effective.[1]
Therefore, this appeal is dismissed as moot.
APPEAL DISMISSED AS MOOT.
Hooper, C.J., and Maddox, Houston, Kennedy, Cook, See, and Lyons, JJ., concur.
Almon, J., concurs in the result.
[1] The Supreme Court of the United States has recognized several exceptions to the federal doctrine of mootness that are applicable to cases involving: (1) class actions where some members of the class still have a live case or controversy; (2) wrongs capable of repetition, yet evading review; (3) continuing collateral consequences to a party; and (4) voluntary cessation of injurious activity by a party who is free to resume it. See Sosna v. Iowa,419 U.S. 393, 399 (1975) (holding that mootness of the class representative's particular claim did not render the entire class action moot as long as other members of the class continued to have a live controversy); Moore v. Ogilvie, 394 U.S. 814, 816 (1969) (holding that plaintiffs' challenge to state election law was not moot, even after the challenged election was completed, because the plaintiffs could challenge the law with respect to future elections, so that the basis of their claim might be "capable of repetition, yet evading review"); Sibron v. New York, 392 U.S. 40,53-58 (1968) (holding that a challenge to the seizure of evidence, brought by defendants who had already completed their jail sentences, was not moot, because the defendants could still suffer adverse "collateral consequences" arising from their criminal records); United States v. W.T. Grant Co., 345 U.S. 629, 632
(1953) (holding that the Government's antitrust challenge to the defendant corporations' practice of using interlocking boards of directors was not rendered moot by the defendants' voluntarily ceasing the practice, because the defendants were free to resume that practice at any time). The rationales underlying these exceptions are not applicable to this case.